**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**AARON R. STANLEY,**

        **Plaintiff,**

        v.                              CASE NO. 12-3089-SAC

**COL. ERIC R. BELCHER, et al.,**

        **Defendants.**

**MEMORANDUM AND ORDER**

This matter is a *Bivens*-type[1] civil rights action filed pro se by a plaintiff alleging violations of his federal constitutional rights during his incarceration at the United States Disciplinary Barracks, Fort Leavenworth, Kansas (USDB).

Defendants have filed a motion to dismiss (Doc. 16). For the reasons stated herein, the court grants the motion.

*Background*

This matter arises from an incident at the USDB in August 2010 that began with plaintiff's attack on a correctional specialist. Plaintiff took the officer's keys, and, aided by other inmates, released ten more maximum security inmates. The specialist was locked in a shower stall.

Other staff members soon ordered the inmates to release the specialist and return to their cells. The inmates refused to follow that order and instead, attempted to disable the video security system, broke furniture and other items to use as weapons, and flooded

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

the housing unit. Two of the inmates removed the specialist from the shower stall and attacked him before locking him in again.

Apparently expecting the arrival of a response team, plaintiff and other inmates covered their faces with clothing, barricaded the doors to the unit, and obscured views into the area and the shower stall where the specialist was held.

The facility assembled a response team to force an entry into the housing area. Before deploying that team, defendant Belcher ordered the inmates to return to their cells and offered to meet with them individually in their cells. They refused to comply. Defendant Belcher repeated the order, and after the inmates again refused to comply, he ordered the response team to execute the response plan, which began with the use of pepper spray. The barricades erected by the inmates rendered this effort unsuccessful, and the team then elevated its response to the use of non-lethal rubber pellets. After five team members fired the pellets through openings near the main access door, the remaining team member breached the door, pressed through the barricades, and continued firing upon non-compliant prisoners. Approximately six of the prisoners, including the plaintiff, refused to retreat and continued to resist the team members. As a result, the team fired a second volley of pellets and eventually subdued all of the resisting inmates.

The team placed the inmates in flexible restraints, removed the specialist from the shower and escorted him to a medical station, and placed the inmates in a triage area for examination of their status. There is no information that identifies any physical injury to the plaintiff.

Following the incident, plaintiff immediately was placed on

"intractable" status. He remained in that status for three days, when he was transferred to administrative segregation pending investigation. He was convicted by a court-martial in November 2011, and also was subjected to an administrative Discipline and Adjustment (D&A) Board for his involvement in the incident. He was housed at the USDB as a maximum security inmate until September 2012, when he was elevated to medium security. He was discharged from the U.S. Army on March 22, 2013, and in May 2013, he was transferred to the custody of the federal Bureau of Prisons.

*The motion to dismiss*

Defendants move for dismissal pursuant to Fed.R.Civ.P. 12(b)(1), which allows a court to dismiss a complaint for "lack of subject matter jurisdiction". Such a dismissal is not an adjudication on the merits of the action, but rather a determination that the court has no authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)(the federal courts are courts of limited jurisdiction and may only exercise jurisdiction where they are authorized to do so). A Rule 12(b)(1) motion is "determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). Plaintiff has the burden of establishing the court's subject matter jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Defendants assert several grounds for the dismissal of this action. First, they contend that plaintiff's claims are barred by the *Feres* doctrine.

In *Feres v. United States*, 340 U.S. 135 (1950), the United States Supreme Court determined that the Federal Tort Claims Act did not

operate as a waiver of sovereign immunity for an action brought by active duty military personnel, holding that the federal government is not "liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146.

Following *Feres*, the federal courts have extended its "incident to service" test to bar other damages actions against military officials. In *Chappell v. Wallace*, 462 U.S. 296 (1983), the Court applied the *Feres* doctrine to bar constitutional claims brought pursuant to *Bivens*, holding "that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Chappell*, 462 U.S. at 305. Thereafter, the Court reiterated its holding that the *Feres* doctrine bars a *Bivens* action in *United States v. Stanley*, 483 U.S. 669, 681 (1987)("Today, no more than when we wrote *Chappell*, do we see any reason why our judgment in the *Bivens* context should be any less protective of military concerns than it has been with respect to FTCA suits, where we adopted an 'incident to service' rule.")

Plaintiff's status as a military prisoner dictates that his claims arose incident to military service. *See Ricks v. Nickels*, 295 F.3d 1124 (10th Cir. 2002)(rejecting military prisoner's *Bivens* claim under *Feres* doctrine; although military prisoner had received a punitive discharge prior to his injuries, he remained subject to the Uniform Code of Military Justice). Here, plaintiff was incarcerated in military custody and had not been formally discharged at the time of the incident. It is plain that the *Feres* doctrine bars his damages claims. *See also Smith v. Belcher*, 2012 WL 137879 (D. Kan. 2012)(dismissing substantially identical claims under *Feres*

doctrine).

Plaintiff also seeks declaratory and injunctive relief. However, plaintiff's transfer from military custody to the Bureau of Prisons renders these claims moot. "A case becomes moot when factual developments render a claim no longer live and ongoing, such that a decision on the merits will not affect the behavior of the defendant toward the plaintiff." *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010)(plaintiff's transfer from facility mooted claims for declaratory and injunctive relief) and *Nasious v. Colorado*, 495 Fed.Appx. 899, *3 (10th Cir. 2012)(citing "well settled" principle that transfer from a prison moots request for declaratory or injunctive relief).

### Conclusion

For the reasons set forth, the court grants defendants' motion to dismiss. Plaintiff's motions for order, which concern evidence submitted on a DVD, are denied as moot because this matter has been determined on jurisdictional grounds.

IT IS, THEREFORE, BY THE COURT ORDERED defendants' motion to dismiss (Doc. 16) is granted.

IT IS FURTHER ORDERED plaintiff's motions for order (Docs. 15 and 19) are denied.

Copies of this Memorandum and Order shall be transmitted to the parties.

**IT IS SO ORDERED.**

DATED: This 11th day of March, 2014, at Topeka, Kansas.

S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge